**IN THE UNITED STATES DISTRICT COURT FOR THE
SOURTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| CAROL WALLACE<br>6515 Barmble Avenue, APT 1<br>Cincinnati, OH 45227, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| BON SECOURS MERCY HEALTH, INC.<br>4777 East Galbraith Road<br>Cincinnati, OH 45236, | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:** | )<br>) | |
| BON SECOURS MERCY HEALTH, INC.<br>c/o CORPORATION SERVICE CO.<br>Registered Agent<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Carol Wallce, by and through undersigned counsel, as her Complaint against

Defendant Bon Secours Mercy Health, Inc ("Mercy Health"), states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Wallace is a resident of the City of Cincinnati, Hamilton County, Ohio.

2. At all times herein, Wallace was acting in the course and scope of her employment.

3. Mercy Health is a not-for-profit domestic corporation that does business at 4777 East Galbraith

    Road, Cincinnati, OH 45236.

4. Mercy Health is and, at all times herein, was an employer within the meaning of R.C. § 4112.01

    *et seq.*

5. Mercy Health hires citizens of the State of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Mercy Health comports with due process.

6. The claims herein arose from or relates to the contacts of Mercy Health with Ohio residents, thereby conferring specific jurisdiction over Mercy Health.

7. All of the material events alleged in this Complaint occurred in Hamilton County.

8. Personal jurisdiction is proper over Mercy Health pursuant to R.C. § 2307.382(A)(1) and (4).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Wallace is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e. The Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*. The Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

11. This Court has supplemental jurisdiction over Wallace's state law claims pursuant to 28 U.S.C. § 1367 as Wallace's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. Within 300 days of the conduct alleged below, Wallace filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 22A-2024-00858 against Mercy Health ("Wallace EEOC Charge").

14. Wallace dually filed the Wallace EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

15. On or about April 18, 2024, the EEOC issued a Notice of Right to Sue letter to Wallace regarding the Wallace EEOC Charge.

16. Wallace received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

17. Wallace has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

18. Wallace has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

19. Wallace is a former employee of Mercy Health.

20. Wallace began working for Mercy Health on or about May 8, 2000.

21. Wallace worked for Mercy Health as a Unit Secretary.

22. Wallace is African American.

23. Mercy Health was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

24. At all times relevant herein, Wallace was employed by Mercy Health for at least 12 months and had at least 1,250 hours of service with Mercy Health and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

25. Wallace suffers from depression (Wallace's "Disability").

26. Wallace's Disability is a mental or psychological disorders, and specifically intellectual Disability.

27. Wallace's Disability is a disease.

28. Wallace's Disability relates to an intellectual disability.

29. Wallace's Disability may cause physical impairments.

30. Wallace's Disability substantially limits one or more major life activities.

31. Wallace has a record of Wallace's Disability.

32. As a result of Wallace's Disability, Wallace is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

33. Wallace disclosed Wallace's Disability to Defendant.

34. In the alternative, Defendant perceived Wallace as being disabled.

35. In the alternative, the Defendant perceived that Wallace's Disability constituted mental impairments.

36. In the alternative, Defendant perceived Wallace's Disability to substantially impair one or more major life activities, including working.

37. Despite these actual or perceived disabling condition, Wallace was still able to perform the essential functions of her job.

38. As a result of Wallace's Disability, Wallace sometimes has trouble focusing, working, sleeping, and interacting.

39. As a result of Wallace's Disability, Wallace sometimes experiences mood imbalances that affect the way she communicates and/or interacts with other people.

40. In or about May 2020, Mercy Health began treating Wallace less favorably than her similarly situated, non-African American coworkers ("Discriminatory Treatment").

41. The Discriminatory Treatment involved Robin Hite prohibiting Wallace from completing work tasks.

42. Hite is Caucasian.

43. Hite did not prohibit Wallace's similarly situated non-African coworkers from completing work tasks.

44. The Discriminatory Treatment involved Hite punishing Wallace for completing work tasks.

45. Hite did not prohibit Wallace's similarly situated non-African American coworkers from completing work tasks.

46. The Discriminatory Treatment involved Hite forcing Wallace to work through lunch.

47. Hite did not force Wallace's similarly-situated non-African American coworkers to work through lunch.

48. The Discriminatory Treatment involved Mercy Health reprimanding Wallace for using the restroom.

49. Mercy Health did not reprimand Wallace's similarly-situated African American employees for using the restroom.

50. Hite is Caucasian.

51. The Discriminatory Treatment was based on Wallace's race.

52. The Discriminatory Treatment was unwanted by Wallace.

53. Defendant has a Discrimination Policy.

54. The Discriminatory Treatment is a violation of the Discrimination Policy.

55. Alternatively, the Discriminatory Treatment is not a violation of the Discrimination Policy.

56. Defendant has a Harassment Policy.

57. The Discriminatory Treatment violates the Harassment Policy.

58. Alternatively, the Discriminatory Treatment does not violate the Harassment Policy.

59. Alternatively, the Discriminatory Treatment is permitted by Defendant.

60. The Discriminatory Treatment constituted harassment.

61. The Discriminatory Treatment created a hostile work environment based on race.

62. The Discriminatory Treatment caused Wallace emotional distress.

63. The Discriminatory Treatment continued throughout Wallace's employment.

64. In or about May 2021, Wallace complained to Radiology Manager Ruth Woosley about the Discriminatory Treatment ("First Protected Complaint").

65. Mercy Health has a policy of investigating significant workplace issues or events.

66. The First Protected Complaint reported a significant workplace issue or event.

67. Pursuant to Mercy Health's policies, the First Protected Complaint should be investigated.

68. Alternatively, pursuant to Mercy Health's policies, the First Protected Complaint should not be investigated.

69. An investigation should include interviewing the complainant.

70. An investigation should include interviewing the subject of the complaint.

71. An investigation should include interviewing the subject of the reported discrimination.

72. An investigation should include interviewing witnesses to the reported discrimination.

73. An investigation should include getting a written statement from the complainant.

74. An investigation should include getting a written statement from the subject of the complaint.

75. An investigation should include getting a written statement from the subject of the reported discrimination.

76. In response to the First Protected Complaint, Defendant did not interview Wallace.

77. In response to the First Protected Complaint, Defendant did not interview Hite.

78. In response to the First Protected Complaint, Defendant did not interview any witnesses.

79. In response to the First Protected Complaint, Defendant did not get a written statement from Wallace.

80. In response to the First Protected Complaint, Defendant did not get a written statement from Hite.

81. In response to the First Protected Complaint, Defendant did not get a written statement from any witnesses.

82. As a result of the First Protected Complaint, Defendant conducted no investigation whatsoever.

83. By failing to investigate the First Protected Complaint, Defendant ratified Hite's conduct.

84. By failing to investigate the First Protected Complaint, Defendant allowed Hite's conduct to continue.

85. Failing to investigate the First Protected Complaint is an adverse action.

86. Failing to investigate the First Protected Complaint is an adverse employment action.

87. Defendant willfully failed to investigate the First Protected Complaint.

88. In response to the First Protected Complaint, Defendant did not correct the Discriminatory Treatment.

89. In response to the First Protected Complaint. Defendant did not tell Wallace why they declined to correct the Discriminatory Treatment.

90. In response to the First Protected Complaint, Defendant failed to take any remedial action.

91. From May 2020 until the end of her employment, Wallace continued to adequately perform the essential functions of her job.

92. In or about August 2022, Wallace notified Hite of Wallace's Disability.

93. In or about September 2022, Wallace applied for FMLA leave ("FMLA Request").

94. Wallace's FMLA Request was granted.

95. Wallace utilized intermittent FMLA leave for approximately one week ("FMLA Leave").

96. Wallace returned work in or about late September 2022.

97. In or about September 2022, Wallace filed a written grievance against Hite to the Human Resources Department and stated the discrimination and retaliation she experienced ("Second Protected Complaint").

98. The Second Protected Complaint reported a significant workplace issue or event.

99. Pursuant to Mercy Health's policies, the Second Protected Complaint should be investigated.

100. Alternatively, pursuant to Mercy Health's policies, the Second Protected Complaint should not be investigated.

101. In response to the Second Protected Complaint, Defendant did not interview Wallace.

102. In response to the Second Protected Complaint, Defendant did not interview Hite.

103. In response to the Second Protected Complaint, Defendant did not interview any witnesses.

104. In response to the Second Protected Complaint, Defendant did not get a written statement from Wallace.

105. In response to the Second Protected Complaint, Defendant did not get a written statement from Hite.

106. In response to the Second Protected Complaint, Defendant did not get a written statement from any witnesses.

107. In response to the Second Protected Complaint, Defendant conducted no investigation whatsoever.

108. By failing to investigate the Second Protected Complaint, Defendant ratified Hite's conduct.

109. By failing to investigate the Second Protected Complaint, Defendant allowed Hite's conduct to continue.

110. Failing to investigate the Second Protected Complaint is an adverse action.

111. Failing to investigate the Second Protected Complaint is an adverse employment action.

112. Defendant willfully failed to investigate the Second Protected Complaint.

113. Defendant intentionally failed to investigate the Second Protected Complaint.

114. In or about October 2022, Wallace asked Hite why she was being treated worse than her similarly situated coworkers ("Third Protected Complaint").

115. Hite denied the disparate treatment.

116. Hite replied to the Third Complaint by stating she was "unsure why Wallace was being bad."

117. The Third Protected Complaint reported a significant workplace issue or event.

118. Pursuant to Mercy Health's policies, the Third Protected Complaint should be investigated.

119. Alternatively, pursuant to Mercy Health's policies, the Third Protected Complaint should not be investigated.

120. In response to the Third Protected Complaint, Defendant did not interview Wallace.

121. In response to the Third Protected Complaint, Defendant did not interview Hite.

122. In response to the Third Protected Complaint, Defendant did not interview any witnesses.

123. In response to the Third Protected Complaint, Defendant did not get a written statement from Wallace.

124. In response to the Third Protected Complaint, Defendant did not get a written statement from Hite.

125. In response to the Third Protected Complaint, Defendant did not get a written statement from any witnesses.

126. In response to the Third Protected Complaint, Defendant conducted no investigation whatsoever.

127. By failing to investigate the Third Protected Complaint, Defendant ratified Hite's conduct.

9

128. By failing to investigate the Third Protected Complaint, Defendant allowed Hite's conduct to continue.

129. Failing to investigate the Third Protected Complaint is an adverse action.

130. Failing to investigate the Third Protected Complaint is an adverse employment action.

131. Defendant willfully failed to investigate the Third Protected Complaint.

132. Defendant intentionally failed to investigate the Third Protected Complaint.

133. On or about November 7, 2022, Hite and Woosley called Wallace into a meeting.

134. On or about November 7, 2022, Woosley and Hite informed Wallace her employment was terminated ("Termination").

135. The Termination was pretext for race discrimination.

136. The Termination was pretext for disability discrimination.

137. The Termination was pretext for FMLA retaliation.

138. Mercy Health has a progressive disciplinary policy ("Discipline Policy").

139. A verbal warning is the lowest level of discipline in the Discipline Policy.

140. Wallace did not receive a verbal warning before the Termination.

141. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

142. Wallace did not receive a written warning before the Termination.

143. A termination is the highest level of discipline in the Discipline Policy.

144. Mercy Health knowingly skipped progressive disciplinary steps in terminating Wallace's employment.

145. Mercy Health followed the progressive discipline policy when Nurse Marian Lewis was terminated.

146. Lewis is Caucasian.

147. Mercy Health followed the progressive discipline policy when Medical Assistant Terri Lufk was terminated.

148. Lufk is Caucasian.

149. Mercy Health knowingly terminated Wallace's employment.

150. Mercy Health knowingly took an adverse employment action against Wallace.

151. Mercy Health knowingly took an adverse action against Wallace.

152. Mercy Health intentionally skipped progressive disciplinary steps in terminating Wallace's employment.

153. Mercy Health intentionally terminated Wallace's employment.

154. Mercy Health intentionally took an adverse employment action against Wallace.

155. Mercy Health intentionally took an adverse action against Wallace.

156. Mercy Health knew that skipping progressive disciplinary steps in terminating Wallace's employment would cause Wallace harm, including economic harm.

157. Mercy Health knew that terminating Wallace's employment would cause Wallace harm, including economic harm.

158. Mercy Health willfully skipped progressive disciplinary steps in terminating Wallace's employment.

159. Mercy Health willfully terminated Wallace's employment.

160. Mercy Health willfully took an adverse employment action against Wallace.

161. Mercy Health willfully took an adverse action against Wallace.

162. As a direct and proximate result of Mercy Health's conduct, Wallace suffered and will continue to suffer damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

163. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

164. Defendant took adverse employment actions against Wallace based on Wallace's race.

165. Defendant violated Title VII when they took adverse employment actions against Wallace based on Wallace's race.

166. Defendant violated Title VII when they engaged in disparate treatment based on Wallace's race.

167. Wallace suffered damages as a proximate result of Defendant' conduct based on Wallace's race.

168. As a direct and proximate result of Defendant' race-based conduct, Wallace has suffered and will continue to suffer damages.

169. In discriminating against Wallace based on race, Defendant acted with malice or reckless indifference to the rights of Wallace, thereby entitling Wallace to an award of punitive damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

170. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

171. Throughout her employment, Wallace was fully competent to perform her essential job duties.

172. Mercy Health treated Wallace differently than other similarly-situated employees based on her race.

173. Mercy Health violated R.C. § 4112.02(A) by discriminating against Wallace due to her race.

174. On or about November 7, 2022, Mercy Health terminated Wallace's employment without just cause.

175. At all times material herein, similarly-situated non-African American employees were not terminated without just cause.

176. Mercy Health terminated Wallace's employment based on her race.

177. Mercy Health violated R.C. § 4112.01 *et seq.* when they terminated Wallace's employment based on her race.

178. As a direct and proximate result of Mercy Health's conduct, Wallace has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

179. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

180. Defendant took adverse employment actions against Wallace based on Wallace's Disability.

181. Defendant violated the ADA when they took adverse employment actions against Wallace based on Wallace's Disability.

182. Defendant violated the ADA when they engaged in disparate treatment based on Wallace's Disability.

183. Wallace suffered damages as a proximate result of Defendant's conduct based on Wallace's Disability.

184. As a direct and proximate result of Defendant's disability-based conduct, Wallace has suffered and will continue to suffer damages.

185. In discriminating against Wallace based on her disability, Defendant acted with malice or reckless indifference to the rights of Wallace, thereby entitling Wallace to an award of punitive damages.

**COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

186. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. Mercy Health treated Wallace differently than other similarly-situated employees based on her disabling condition.

188. Defendant treated Wallace differently than other similarly-situated employees based on her perceived disabling condition.

189. On or about November 7, 2022, Mercy Health terminated Wallace's employment without just cause.

190. Defendant terminated Wallace's employment based on her disability.

191. Defendant terminated Wallace's employment based on her perceived disability.

192. Defendant violated R.C. § 4112.02 when it discharged Wallace based on her disability.

193. Defendant violated R.C. § 4112.02 when they terminated Wallace's employment based on her perceived disability.

194. Defendant violated R.C. § 4112.02 by discriminating against Wallace based on her disabling condition.

195. Defendant violated R.C. § 4112.02 by discriminating against Wallace based on her perceived disabling condition.

196. As a direct and proximate result of Mercy Health's conduct, Wallace suffered and will continue to suffer damages.

## COUNT V: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

197. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

198. As a result of Mercy Health's discriminatory conduct described above, Wallace complained about the age, disability and race discrimination she was experiencing.

199. Subsequent to Wallace's reporting of race discrimination and Discriminatory Treatment to her supervisor and employer, Mercy Health terminated Wallace's employment.

200. Mercy Health's actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

201. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

202. As a direct and proximate result of Mercy Health's conduct, Wallace suffered and will continue to suffer damages.

## COUNT VI: RETALIATION IN VIOLATION OF TITLE VII

203. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

204. As a result of Defendant's discriminatory conduct described above, Wallace complained about the race discrimination she was experiencing.

205. Subsequent to Wallace's reporting of race discrimination to her supervisors, Wallace's employment was terminated.

206. Defendant's actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

207. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

208. As a direct and proximate result of Defendant's conduct, Wallace suffered and will continue to suffer damages.

### COUNT VII: RETALIATION IN VIOLATION OF THE ADA

209. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

210. As a result of Defendant's discriminatory conduct described above, Wallace complained about the disability discrimination she was experiencing.

211. Subsequent to Wallace's reporting of disability discrimination to the Defendant, Defendant retaliated against Wallace by terminating Wallace's employment.

212. Defendant's actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

213. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

214. As a direct and proximate result of Defendant's conduct, Wallace suffered and will continue to suffer damages.

### COUNT VIII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

215. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

216. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

217. Defendant is a covered employer under FMLA.

218. During her employment, Wallace qualified for FMLA leave.

219. During her employment, Wallace attempted to request FMLA leave by asking Defendant if she qualified to take FMLA leave.

220. Defendant failed to properly advise Wallace of his rights under FMLA.

221. Defendant unlawfully interfered with Wallace's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

222. Defendant's act of writing Wallace up during her FMLA leave violated and interfered with Wallace's FMLA rights.

223. Defendant violated section 825.300(c)(1) of FMLA and interfered with Wallace's FMLA rights when Defendant did not honor Wallace's approved use of FMLA leave.

224. As a direct and proximate result of Defendant's conduct, Wallace is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IX: RETALIATION IN VIOLATION OF FMLA

225. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

226. During her employment, Wallace utilized FMLA leave.

227. After Wallace utilized her qualified FMLA leave, Mercy Health retaliated against her.

228. Mercy Health retaliated against Wallace by terminating her employment.

229. Mercy Health willfully retaliated against Wallace in violation of 29 U.S.C. § 2615(a).

230. As a direct and proximate result of Mercy Health's wrongful conduct, Wallace is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Carol Wallce respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Mercy Health to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees; -

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Wallace for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wallace claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

                                                                               Respectfully submitted,

                                                            */s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:   (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
          greg.shumaker@spitzlawfirm.com

*Attorneys for Plaintiff Carol Wallce*

## JURY DEMAND

Plaintiff Carol Wallce demands a trial by jury by the maximum number of jurors permitted.

                                                            */s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)

*Attorneys for Plaintiff Carol Wallce*